**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| **Plaintiff,** | * | |
| **v.** | | **Case No.: GJH-16-451** |
| | * | |
| **CARLOS CUEVAS,** | | **Case No.: GJH-17-473** |
| | * | |
| **Defendant.** | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Defendant Carlos Cuevas is currently serving a sentence of 42 months of incarceration at MDC Brooklyn following his guilty plea to charges of conspiracy to commit money laundering. ECF No. 131. Pending before the Court is Mr. Cuevas's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C § 3582(c)(1)(A)(i). ECF No. 222. No hearing is necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons that follow, Mr. Cuevas's Motion will be granted.

**I.    BACKGROUND**

Mr. Cuevas's offenses were charged in indictments in two different judicial districts. The first indictment was filed in the District of Massachusetts on November 30, 2016, alleging a single count of conspiracy to commit money laundering with respect to drug conspiracy proceeds in violation of 18 U.S.C. § 1956(h). *United States v. Cuevas*, No. 1:16-cr-10341-LTS (Nov. 30, 2016), ECF Nos. 3, 3-2. At a detention hearing on December 15, 2016, U.S. Magistrate Judge David H. Hennessy issued an order setting Defendant's conditions of release, including travel restrictions and maintaining a residence in Patterson, New Jersey. *Cuevas*, No. 1:16-cr-10341-LTS (Dec. 15, 2016), ECF Nos. 14, 15.

On February 15, 2017, Mr. Cuevas was charged in a multi-count, multi-defendant superseding indictment in this district alleging a drug distribution and money laundering conspiracy. ECF No. 35.[1] Several other defendants were charged with drug offenses including conspiracy to distribute and possess with intent to distribute controlled substances, distribution of controlled substances, and use of communications devices to facilitate narcotics trafficking, while Mr. Cuevas was charged with one count of conspiracy to launder money, in violation of 18 U.S.C. § 1956(h), and three counts of money laundering, relating to three 2016 transactions of alleged proceeds of the drug conspiracy, in violation of 18 U.S.C § 1956(a). *Id.* at 4–5, 18.[2] Defendant made an initial appearance before U.S. Magistrate Judge Thomas M. DiGirolamo on March 31, 2017, ECF No. 69, who issued an order setting conditions of release, including regular reporting to Pretrial Services and travel restrictions, ECF No. 72.

On April 26, 2017, Defendant was arraigned before U.S. Magistrate Judge William Connelly and pleaded not guilty to the four charges. ECF No. 82. On September 11, 2017, pursuant to Rule 20 of the Federal Rules of Criminal Procedure, Mr. Cuevas consented to the transfer of the Massachusetts indictment to this district for purposes of pleading guilty to the charge. *United States v. Cuevas*, No. GJH-17-473 (Sept. 11, 2017), ECF No. 1. The following day, Mr. Cuevas executed a plea agreement with the Government and was rearraigned before this Court, entering pleas of guilty to the money laundering conspiracy count of the indictment originally filed in this district and the money laundering conspiracy count transferred to this district the day before. ECF Nos. 131, 132.

---

[1] Citations to ECF filings that do not include docket numbers are filings in No. GJH-16-451, *United States v. Alarcon-Colindres*, the multi-defendant case in this district in which Mr. Cuevas was charged.
[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Mr. Cuevas's plea agreement included an attachment stipulating to certain facts concerning the offenses to which he pleaded guilty. ECF No. 132-1. The stipulation explained that with respect to the charge filed in this district, from at least June 2015 until at least August 2016, Defendant conspired with others to conduct financial transactions with drug trafficking proceeds to conceal their source. *Id.* at 1. Specifically, Defendant delivered a total of $260,860 in proceeds to an unnamed individual in Maryland across four trips, with the intent that the individual would transfer them outside the United States by wire. *Id.* Defendant was compensated at least $8,500 for his deliveries. *Id.*

With respect to the Massachusetts charge, the stipulation stated that between February 2016 and November 2016, Defendant participated in a separate conspiracy to launder drug trafficking proceeds. *Id.* at 1–2. On July 12, 2016, a Massachusetts police officer conducted a traffic stop of Defendant's vehicle and observed Defendant attempting to conceal a large amount of cash in the center console. *Id.* at 2. A search revealed $102,470 in drug trafficking proceeds. *Id.* Defendant intended to transfer the money to an unknown individual to be wired outside the United States. *Id.* Defendant had previously met with the leader of a Massachusetts drug trafficking organization to collect and transport drug proceeds on multiple occasions. *Id.*

Finally, the stipulation included relevant uncharged conduct. *Id.* Specifically, on August 30, 2016, Maryland State Police conducted a traffic stop of Defendant's vehicle and a drug detection dog alerted to the odor of narcotics. *Id.* A search of the vehicle revealed $25,000 concealed in a dashboard compartment. *Id.* According to the stipulation, Defendant typically secreted drug trafficking proceeds in hidden compartments or "traps" installed in his vehicle while he transported the funds from the Boston, Massachusetts metropolitan area to Maryland

and other locations. *Id.* The total amount of currency involved in the offenses to which

Defendant agreed to plead and in the uncharged related conduct was $387,760. *Id.*

The Court held Mr. Cuevas's sentencing hearing on September 7, 2018. ECF No. 199.

Based on an offense level of 25 and Defendant's criminal history score placing him in criminal

history category I, the Court determined that Mr. Cuevas's advisory sentencing guidelines range

was 57 to 71 months of incarceration; however, the Court varied downward, sentencing

Defendant to 42 months for each count to run concurrently, followed by three years of

supervised release for each count, also running concurrently. ECF No. 200; ECF No. 201 at 1.

The Court also issued a consent order of forfeiture ordering Defendant to forfeit $8,500 directly

traceable to the offenses of conviction. ECF No. 200-1 at 1. Defendant states that he surrendered

himself to the custody of the U.S. Bureau of Prisons ("BOP") on October 22, 2018. ECF No.

222-1 at 2. According to BOP's Inmate Locator, Defendant is currently scheduled for release on

October 11, 2021. Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/.

On July 9, 2020, Mr. Cuevas filed an Emergency Motion for Compassionate Release

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 222. The Government responded on July 23,

2020 with a letter stating that the Government defers to the Court regarding Defendant's request,

although it does not concede that Defendant has established sufficient grounds for release. ECF

No. 225. Mr. Cuevas filed a letter Reply on July 27, 2020. ECF No. 230. Each of the three filings

was accompanied by a motion to seal. ECF Nos. 221, 224, 229.

## II.    DISCUSSION

Asserting that he is at serious risk of becoming severely ill from COVID-19 due to

preexisting medical conditions, Mr. Cuevas moves for a reduction in his sentence for

"extraordinary and compelling reasons" pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 222;

ECF No. 222-1 at 1. The Court reviews the framework applicable to Defendant's request before assessing whether Defendant has satisfied its requirements.

### A.  Governing Provisions

Recently modified by Section 603(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5238 (2018), 18 U.S.C. § 3582(c) bars courts from modifying terms of imprisonment once imposed unless certain conditions are met. *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). In relevant part, § 3582(c)(1)(A) provides that:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that–
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1).

A complementary provision, 28 U.S.C. § 994(t), provides that the U.S. Sentencing Commission, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *See United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219, at *2 (D. Md. Apr. 6, 2020). The Commission has provided this description at § 1B1.13 of the U.S. Sentencing Guidelines, which states in relevant part that:

5

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C.
> § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may
> impose a term of supervised release with or without conditions that does
> not exceed the unserved portion of the original term of imprisonment) if,
> after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent
> that they are applicable, the court determines that–
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .
> (2) The defendant is not a danger to the safety of any other person or to the
> community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 further details the Commission's understanding of

"extraordinary and compelling reasons," which include if a defendant has been diagnosed with a

terminal illness or other serious physical or medical condition, is above the age of 65 and is in

deteriorating health due to aging, has experienced certain extenuating family circumstances, or if

"[o]ther [r]easons" arise that have been "determined by the Director of the Bureau of Prisons" to

be "extraordinary and compelling reason[s] other than, or in combination with, the reasons

described" in the Policy Statement. U.S.S.G. § 1B1.13 cmt. n.1(D). BOP has offered its

determination in a Program Statement numbered 5050.50 and titled "Compassionate

Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and

4205(g)."[3]

Judges in this district and elsewhere have found, however, that § 1B1.13 and its

Application Note are inconsistent with the First Step Act. As Judge Chuang of this Court

recently explained in *United States v. Mel*, while § 1B1.13 "identifies certain specific scenarios

under which a sentence reduction could be warranted, it nevertheless permits a reduction based

only on meeting the broad category of 'extraordinary and compelling reasons'" as determined by

---

[3] The Program Statement, issued January 17, 2019, is available at
https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited August 2, 2020).

BOP. No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) (citing U.S.S.G. §

1B1.13(1)(A) & cmt. n.1(D)). Judge Chuang reasoned, however, that "[s]ince the First Step Act

changes the law to allow a compassionate release reduction to be granted by the Court without

input from the BOP, the pre-First Step Act references in the policy statement to determinations

by the BOP are outdated and not binding." *Id.* Similarly, in *United States v. Decator*, Judge

Blake held that "[w]hile Sentencing Commission and BOP criteria remain helpful guidance, the

amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there

are 'extraordinary and compelling reasons' to reduce a sentence." 2020 WL 1676219 at *2

(reaching this conclusion after a careful review of the relevant provisions and recent case law).

This Court recently found that these analyses are persuasive and therefore adopted the

same conclusions. *See United States v. Lazarte*, No. GJH-16-296, 2020 WL 3791977, at *3 (D.

Md. July 7, 2020). Accordingly, the Court's consideration of sentence reduction motions follows

the three steps established by § 3582(c)(1)(A) as modified by the First Step Act. First, assuming

the defendant has exhausted administrative remedies, the Court considers whether a reduction is

warranted for extraordinary and compelling reasons, the meaning of which is a matter of the

Court's "independent discretion." *Decator*, 2020 WL 1676219, at *2.

Next, the Court assesses whether "such a reduction is consistent with applicable policy

statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable

Policy Statement remains § 1B1.13, despite its partial nullification as a result of the First Step

Act. Accordingly, pursuant to the Policy Statement, the Court must find that "[e]xtraordinary and

compelling reasons warrant the reduction;"[4] that "[t]he defendant is not a danger to the safety of

---

[4] A provision of the Policy Statement not at issue here, § 1B1.13(1)(B), provides an alternative to finding extraordinary and compelling reasons under § 1B1.13(1)(A) for Defendants who are at least 70 years old and have served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c).

any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and that "[t]he

reduction is consistent with [the Sentencing Commission's] policy statement." U.S.S.G.

§ 1B1.13. Finally, § 3582(c)(1)(A) provides that after considering the Policy Statement, the

Court must "consider[] the factors set forth in section 3553(a) to the extent that they are

applicable."

### B.  Exhaustion of Administrative Remedies

As noted previously, § 3582(c)(1)(A) requires that a defendant seeking a modification of

a term of imprisonment "fully exhaust[] all administrative rights to appeal a failure of the Bureau

of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of

such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C.

§ 3582(c)(1)(A). Here, counsel for Mr. Cuevas filed an emergency request for compassionate

release with Warden D. Edge of MDC Brooklyn, where Mr. Cuevas is currently held, on March

30, 2020. ECF No. 222-3. The parties agree that the Warden denied the request by letter on April

21, 2020, ECF No. 222-3 at 6, ECF No. 225-1, and that Mr. Cuevas therefore has properly

exhausted his administrative remedies.

### C.  Extraordinary and Compelling Reasons

The Court next considers whether Mr. Cuevas has sufficiently demonstrated

extraordinary and compelling reasons warranting a reduction of his sentence. Mr. Cuevas asserts

that he is 65 years old and suffers from a variety of medical conditions increasing his risk of

serious complications if he contracts COVID-19. ECF No. 222-1 at 3, 7. These include

hypertension, obesity, sleep apnea, hyperlidemia, osteoarthritis, and prediabetes. Defendant

offers medical records documenting each of his conditions, ECF No. 222-2 at 2–3, and the

Government does not contest their accuracy, ECF No. 225 at 2. The Government also concedes

that at least Mr. Cuevas's age and obesity increase his risk of severe illness should he contract COVID-19, and that hypertension might increase his risk. *Id.*

Though it maintains that "the totality of the circumstances [in this case] do not establish extraordinary and compelling reasons for compassionate release" pursuant to § 3582(c)(1)(A), *id.*, the Government acknowledges that "several courts have found that medical conditions which make a defendant uniquely susceptible to complications from COVID-19 create 'extraordinary and compelling reasons' to grant compassionate release pursuant to § 3582(c)(1)(A)." *United States v. Richardson*, No. JKB-09-0288, 2020 WL 3267989, at *2 (D. Md. June 17, 2020); *see* ECF No. 225 at 2 (citing this finding). Defendant accurately points to cases from this district and others in which courts have granted compassionate release during the COVID-19 pandemic to inmates afflicted with varying combinations of Mr. Cuevas's several conditions, ECF No. 222-1 at 6 (collecting cases), and to guidance from the Centers for Disease Control and Prevention and other health authorities documenting the increased risk caused by each of his conditions and his age, *id.* at 7–11.

According to BOP's website, 12 inmates and 42 staff members have tested positive for COVID-19 at MDC Brooklyn, as Defendant also notes. Federal Bureau of Prisons, COVID-19, https://www.bop.gov/coronavirus (last visited August 2, 2020). Citing the BOP website as of the date of its submission, the Government states that MDC Brooklyn has five active inmate cases, which the Government characterizes as "less than .5% of the total inmate population of 1,510." ECF No. 225 at 3. The Government asks the Court to consider denying Defendant's motion without prejudice "and revisiting the issue should the situation at MDC Brooklyn worsen." *Id.* Further supporting the Government's position, the Court notes that the BOP website currently shows zero active cases among inmates at this facility. Federal Bureau of Prisons, COVID-19,

https://www.bop.gov/coronavirus (last visited August 2, 2020). In a previous case, this Court declined to find extraordinary and compelling reasons where no cases of COVID-19 were present at the relevant facility. *See Lazarte*, 2020 WL 3791977, at \*4–\*5.

Nonetheless, while it is encouraging that the spread of the virus at MDC Brooklyn seems to have slowed, the Court finds the "wait and see" approach the Government proposes to be inappropriate under the totality of the circumstances presented in this case. Here, it appears there were active cases in the facility within the last month, which leads to at least a possibility that untested, asymptomatic cases remain. A "worsen[ing]" of "the situation at MDC Brooklyn," stated in real terms, would mean the infections of more individuals, including those with significant preexisting health issues like Mr. Cuevas. Therefore, the low current case numbers at MDC Brooklyn do not impede the Court from reaching the conclusion that Mr. Cuevas has demonstrated "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A) in light of the pandemic and his demonstrated preexisting health conditions.

The Defendant's age along with his additional conditions, particularly hypertension and obesity, place him at higher risk for severe illness and strengthen the Court's conclusion. *See*, *e.g.*, *United States v. Gray*, No. RDB-16-0364, 2020 WL 2932838, at \*3 (D. Md. June 3, 2020) (finding a 66-year-old defendant with hypertension, Type II diabetes, osteoarthritis, and other conditions had demonstrated extraordinary and compelling reasons); *United States v. Oaks*, No. RDB-17-0288, 2020 WL 3433326, at \*3 (D. Md. June 23, 2020) (finding extraordinary and compelling reasons as to a 73-year-old defendant with conditions including Type II diabetes, hypertension, hyperlipidemia, and arthritis); *United States v. White*, No. CCB-09-369, 2020 WL 3960830, at \*2–\*4 (D. Md. July 10, 2020) (finding extraordinary and compelling reasons as to a

defendant with conditions including obesity, chronic kidney disease, heart disease, hypertension, hyperlipidemia, and neutropenia).

The Court particularly notes the recent decision in *United States v. Salvagno* by Judge Kahn of the Northern District of New York rejecting the Government's Motion for Reconsideration of an order granting compassionate release to a 53-year-old inmate with hypertension but no other known conditions. No. 5:02-CR-51 (LEK), 2020 WL 3410601 (N.D.N.Y. June 22, 2020). After a painstaking and deeply researched review of recent scientific literature produced both by public health agencies and academic researchers in multiple countries, Judge Kahn found not only a "well-established correlation between hypertension and severe manifestations of COVID-19," but also a "substantial chorus of experts who have found that there is a causal relationship." *Id.* at *10–*17.

Judge Kahn's compelling analysis, on which Defendant here draws extensively in his Reply, ECF No. 230 at 2–4, further confirms the Court's finding of extraordinary and compelling reasons warranting a reduction of Defendant's sentence. The Court accordingly proceeds to the remaining components of the § 3582(c)(1)(A) analysis.

### D.  Sentencing Commission Policy Statement

Having found extraordinary and compelling reasons supporting a sentencing reduction, the Court turns to considering whether a reduction would be consistent with the Sentencing Commission's Policy Statement at § 1B1.13. 18 U.S.C. § 3582(c)(1)(A). As noted previously, the Policy Statement directs that to proceed with a sentence reduction, the Court must find that "[e]xtraordinary and compelling reasons warrant the reduction;" that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C.

§ 3142(g);" and that "[t]he reduction is consistent with [the Sentencing Commission's] policy statement." U.S.S.G. § 1B1.13.

The language of the Policy Statement makes clear that the Sentencing Commission's primary focus is the danger to others or the community that an incarcerated defendant would pose if released early. The Court accordingly focuses there as well and finds that this question requires little analysis here. Mr. Cuevas's offenses were non-violent and he had no criminal history or record of prior dangerous behavior, which contributed to the Court's decision to vary downward at sentencing. There are no indications that Defendant would pose any danger to other persons or the community if released. Therefore, a reduction in his sentence would be not be inconsistent with the Sentencing Commission's directive.

### E.  § 3553(a) Factors

The Court finally must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). § 3553(a) directs that "[t]he court shall impose a sentence that is sufficient, but not greater than necessary," to comply with several purposes. 18 U.S.C. § 3553(a). Recently, in *United States v. Morrison*, Judge Grimm of this Court indicated that 18 U.S.C. § 3553(a)(1), "the nature and circumstances of the offense and the history and characteristics of the defendant," and 18 U.S.C. § 3553(a)(2), "the need for the sentence imposed" to further certain purposes, are relevant in weighing compassionate release motions. No. 19-cr-284-PWG, 2020 WL 3447757, at *5 (D. Md. June 24, 2020).

As described previously, in applying the § 3553(a) factors at Defendant's sentencing, the Court found that they supported a downward variance from the Sentencing Guidelines range. Careful consideration of Defendant's pending Motion and a review of the sentencing materials submitted to the Court approximately two years ago compels the Court to conclude that a more

12

significant variance was likely appropriate then and a reduction of sentence is certainly appropriate now. Defendant is a 65-year-old man suffering from a variety of physical ailments. He had no criminal history prior to his conviction in this case. His actions in this case were non-violent and did not involve a firearm; nor does he have any past history involving the use of firearms or involvement in violent activity. While he was involved in a significant drug trafficking organization, his role was limited to transporting drug proceeds, albeit in large amounts. Even without the specter of COVID-19, the Court now struggles to see what legitimate purpose would be served by Mr. Cuevas' continued incarceration.

And it is certainly true that, as other courts weighing compassionate release motions have indicated, when the Court sentenced Mr. Cuevas, it "did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic." *Woodard v. United States*, No. 2:12-cr-105, 2020 WL 3528413, at *3 (E.D. Va. June 26, 2020) (quoting *United States v. Zukerman*, No. 16 Cr. 194 (AT), 2020 WL 1659880, at *6 (S.D.N.Y. Apr. 3, 2020)). It is difficult to conclude that a sentence including such a risk, in the case of Mr. Cuevas, continues to "provide just punishment" for his offenses of conviction, 18 U.S.C. § 3553(a)(2)(A), nor a proportionate level of deterrence, *id.* § 3553(a)(2)(B).

For these reasons, the Court finds that the § 3553(a) factors support reducing Mr. Cuevas' sentence. Therefore, Mr. Cuevas has satisfied each of the requirements of § 3582(c)(1)(A) and is eligible for compassionate release at this time in light of the COVID-19 pandemic. Mr. Cuevas must be released from MDC Brooklyn following a 14-day quarantine period, a measure proposed by the Government and unopposed by Mr. Cuevas. ECF No. 225 at 3; ECF No. 230 at 6.

## III.    CONCLUSION

For the foregoing reasons, Defendant's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C § 3582(c)(1)(A)(i), ECF No. 222, and the parties' motions to seal their filings, ECF Nos. 221, 224, 229, will be granted. Defendant's sentence will be modified to time served and the Government will be directed to hold Defendant in quarantine for 14 days before he is released. Defendant's previously ordered three-year supervised release period will remain in effect. A separate Order shall issue.


Date: August     3, 2020                              /s/_____
                                                     GEORGE J. HAZEL
                                                     United States District Judge